UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

TINA MARIE BRUMMITT,        )
           )
        Plaintiff,        )
           )
v.           )        No. 2:07-CV-182
           )
CARTER COUNTY,        )
TENNESSEE, *ET AL.*,        )
           )
        Defendants.        )

## <u>MEMORANDUM OPINION AND ORDER</u>

This section 1983 matter is before the Court on two separate motions for summary judgment, [Docs. 26 and 32]. Defendants Carter County, Tennessee ("County"), Sheriff Christopher W. Mathes ("Mathes"), Licensed Practical Nurse Tina D. Adkins ("Adkins"), Licensed Practical Nurse Rebecca A. Garland ("Garland"), and Licensed Practical Nurse Marjorie Guinn ("Guinn") filed the first motion arguing that the nurses were not deliberately indifferent to the serious medical needs of the plaintiff as to unnecessarily and wantonly inflict pain, that the nurses are entitled to qualified immunity, and that the County did not have a custom or policy that caused an employee to be deliberately indifferent to a substantial risk of serious harm to the plaintiff. The only remaining defendant, Daniel J. Paul, M.D. ("Paul"), filed the

second motion, arguing that he was not deliberately indifferent to the serious medical needs of the plaintiff as to unnecessarily and wantonly inflict pain and that he is entitled to qualified immunity. Responses have been filed and the matter is ripe for review.

## I. PROCEDURAL HISTORY

The plaintiff filed this suit on August 7, 2007, alleging unconstitutional conduct occurring during January 2007 and February 2007. The parties engaged in discovery and took several party depositions. Then, on April 15, 2008, the County and the nurses filed their motion for summary judgment. Paul filed his separate motion for summary judgment on the same day. The plaintiff moved the Court for additional time to file a response, and the Court granted the extension. The plaintiff filed her response on May 21, 2008; however, she did not respond to the defendants' Statements of Undisputed Material Facts. On June 6, 2008, the plaintiff sought permission from the Court to file a response to the statements of undisputed facts, and she attached her response to the motion as an exhibit. The Court granted her request on June 9, 2008, yet the plaintiff did not thereafter file the response. [1]

Then, on August 28, 2008, the plaintiff filed a Motion to Amend the

---

[1]  Although not properly filed, the plaintiff's response to the statements of undisputed material facts is in the record and has been considered by the Court.

Complaint, and again, she attached the document for which she was seeking permission to file, in this case the First Amended Complaint, as an exhibit to her motion. Apparently, the First Amended Complaint corrected Garland's name[2] and clarified that the nurses were employees of Paul, not the County. Paul, the plaintiff alleged, was an independent contractor of the County. He contracted to provide medical services to the inmates at the Carter County Jail. The amended complaint also added allegations of supervisory liability against Paul. In addition, the plaintiff's motion asked the Court to extend deadlines in the Scheduling Order. The defendants did not oppose this motion, for no response was filed by any defendant. On September 17, 2008, this Court entered an Order granting leave to file the First Amended Complaint, but it took under advisement whether to extend the Scheduling Order deadlines. That same Order directed the parties to "file a pleading on or before September 30, 2008, which sets out their positions in regard to how this amended complaint affects the pending motions for summary judgment." Despite the Order granting leave to file the First Amended Complaint, the plaintiff never actually filed it.[3] Therefore, none of the defendants filed answers to the First Amended Complaint.

---

[2]The original Complaint sued Barabara A. Garland, and the defendant's name is Rebecca A. Garland. Despite the error in the original Complaint, Garland submitted an Answer.

[3] As with the plaintiff's response to the statements of undisputed material facts, the Amended Complaint is in the record, even though not properly filed, and has been considered by the Court in ruling on the pending motions.

On September 17, 2008, the County and the nurses filed a response, stating that the amended complaint had no effect on their summary judgment motion because the motion already addressed the correct relationship between the nurses and the County. Likewise, Paul's response, filed on September 18, stated that the amended complaint did not affect his motion for summary judgment because there is no respondeat superior liability under Title 42 United States Code section 1983. The plaintiff's response, filed on September 25, stated that although she concedes there is no respondeat superior liability under section 1983, the amended complaint now alleged supervisory liability. On October 7, 2008, Paul filed a Supplemental Response to Order and stated that if the Court determines that the nurses were not deliberately indifferent, "then summary judgment must be granted to all defendants regardless of the supervisor liability theory." He further argued that in order to be liable under this theory, the nurses he supervised actually had to engage in deliberate indifference.[4]

On October 8, 2008, the plaintiff filed a Motion to Reopen Discovery because plaintiff's counsel "received information on October 6, 2008[,] that bears directly on the deliberate indifference of the Defendants to Plaintiff's medical needs, and, specifically, on the subjective element of the two-pronged test of 'deliberate

---

[4]The plaintiff moved to strike this supplemental response as untimely, and the United States Magistrate Judge denied her motion.

indifference' as set forth in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994)." The plaintiff supplemented this motion with the affidavit of Jennifer Pauline Hilton Brummitt ("Hilton Brummitt") who stated in the affidavit that on October 9, 2008, her mother, Defendant Garland, told her that Garland attempted to telephone Paul on four occasions to request that he examine the plaintiff while she was an inmate at the jail. The affidavit also stated that Garland told her that Paul stated that "the only way that [plaintiff] would be taken to the hospital was in a body bag." The Magistrate Judge granted plaintiff's motion, and he also granted the defendants' subsequent motion to likewise depose Kenneth Lee Brummitt, the plaintiff's son, who was, at that time, dating Jennifer Pauline Hilton Brummitt.[5]

As a result of this additional discovery, all parties filed supplemental briefs in support of their respective positions regarding the motions for summary judgment. The plaintiff relies upon Hilton Brummitt's affidavit in arguing that there is a genuine issue of material fact as to Paul's deliberate indifference, namely that it proves the subjective element of the deliberate indifference test. The defendants argue that the information in the affidavit is inadmissible double hearsay and cannot be considered by this Court in deciding motions for summary judgment. In addition to

---

[5]According to Hilton Brummitt's affidavit, she was not related to the plaintiff or plaintiff's son. Her deposition revealed that she was married to Kenneth Brummitt's cousin.

these briefs, the plaintiff sought permission from the Court to file a second supplemental brief; however, the Magistrate Judge denied this request.

Finally, on January 27, 2010, this Court ordered the parties to file supplemental briefs addressing the double hearsay issue only. The parties filed their respective briefs on February 10, 2010.[6]

## II. FACTS[7]

On January 4, 2007, the plaintiff was booked into the Carter County Jail for violating her probation. At that time, the plaintiff completed a Carter County Sheriff's Department Jail Medical sheet. She indicated that she had the skin condition psoriasis[8] and that she did not require any emergency treatment. She gave Nurse Garland her medication, which she claimed was prescribed to treat her psoriasis. She gave Garland one pill bottle containing Xanax, Lortab, and Soma.[9] Garland

---

[6]Paul filed another supplemental brief, [Doc. 88], on February 2, 2010. It stated that if the Court determined that the nurses were not deliberately indifferent, then Paul could not be liable under a supervisory liability theory. While this may be true, Paul does not address the fact that the plaintiff alleged deliberate indifference in addition to supervisory liability. Thus, this Court must analyze both issues separately.

[7]The plaintiff asked permission to file a response to the defendants' statements of updisputed facts and attached the response. The Court granted permission; however, she never actually filed her response. Nonetheless, these facts are gleaned from admissible evidence in the filings and the exhibits.

[8] Plaintiff acknowledges in her affidavit that, at the time she was booked into the jail, her skin condition was not severe.

[9] It is unclear why Xanax, Lortab and Soma would be prescribed for treatment of psoriasis. Xanax (alprozalam) is a prescription medication for the treatment of anxiety and panic

inventoried the medication and stored it in the medicine cabinet, but despite the plaintiff's requests, this medicine was never given to her. The plaintiff also signed a release for her medical records, and Garland faxed the release to the plaintiff's family physician. The jail never received the records, and no one sought the records a second time.

The plaintiff's mother brought Curel lotion, lotion which the plaintiff used to help treat her psoriasis, to the jail, and it was given to the plaintiff on January 5, 2007, to use as needed. On January 14, 2007, Nurse Adkins performed a general history and physical on the plaintiff, and plaintiff did not request any medical treatment at that time. The plaintiff presented to the nurses' office on February 2, 2007, as a result of a worsening of her psoriasis. Apparently, she did not fill out the standard form requesting treatment. Garland noted that the plaintiff had severe psoriasis on her entire body and that some dark brown places had cracked open and were oozing blood. Therefore, Garland telephoned her employer and jail physician, Dr. Paul, and left him a message regarding plaintiff's condition. Paul returned Garland's call and gave orders for her to provide the plaintiff with prescription

disorders. *See* http://www.pfizer.com/products/rx/prescriptions.jsp.(last visited March 1, 2010). Lortab is a narcotic pain reliever. *See* http://drugs.com/lortab.html (last visited March 1, 2010). Soma is a muscle relaxer used for treatment of musculoskeletal conditions. *See* http://drugs.com/pro/soma.html (last visited March 1, 2010). Although plaintiff claims in her affidavit that these medications have been prescribed by her personal physician for her "medical needs," she does not offer any affidavit or medical record from her physician.

Hydrocortisone cream, which was prescribed by the plaintiff's family physician. Again, the plaintiff's mother brought this to the jail for plaintiff's use.

On February 5, 2007, plaintiff again was brought to the nurses' office with complaints of increased pain and irritation as a result of her psoriasis. No standard form requesting treatment was filled out. Nurse Guinn noted that areas on the plaintiff's legs were bleeding and all areas appeared severely inflamed. The plaintiff told Guinn, "I can hardly walk. The pain is severe. Please help me." Guinn telephoned Paul, and he ordered the plaintiff be started on a Prednisone dose pack and given fifty milligrams of Benadryl for six days. [10]

On February 7, 2007, Guinn checked on the plaintiff's condition. The plaintiff informed Guinn, "I feel much better." Guinn again checked on the plaintiff the next day and noted that the plaintiff showed improvement. The plaintiff advised Guinn that her rash would come and go, that she had had the condition for years, and that "[t]he prednisone dose pack really helped and the Benadryl. Thanks a lot." On February 12, 2007, Guinn followed up with the plaintiff. Guinn noted that the lesions

---

[10] According to Garland's affidavit, she learned "during the time that [I] was being treated at [Johnson City Medical Center], that Prednisone . . . was not the appropriate drug for my condition and may have actually worsened it." She did not file an affidavit from any medical professional to that effect and thus there is not admissible evidence to support Garland's assertion. Prednisone is in a class of drugs called corticosteroids and is used, among other things, to treat many skin conditions, including psoriasis. *See* http://drugs.com/prednisone.html (last visited March 1, 2010).

were continuing to improve, that the overall drainage from the lesions had decreased, and that the plaintiff was not making any additional complaints. The plaintiff did not inform Guinn or any other nurse of any sores on her back or side.

On the morning of February 13, 2007, the plaintiff was released from the Carter County Jail, and she then went to her family physician's office. She saw Nurse Practitioner Suzonne Swihart. She was treated and released. The plaintiff then went to the Johnson City Medical Center Emergency Room. She again was treated and released. Then, on February 15, 2007, the plaintiff went back to the emergency room and was hospitalized.[11]

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis,*

---

[11] Plaintiff has submitted no medical records from her family physician or the hospital emergency room. It is not known, therefore, what her diagnosis or complaints were at that time or what treatment was prescribed.

*Inc.*, 253 F.3d 900, 907 (6ᵗʰ Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6ᵗʰ Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6ᵗʰ Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere

allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52. In addition, "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his [or her] earlier deposition testimony. *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986)). Also, "[h]earsay evidence may not be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

## III. ANALYSIS

### A. THE NURSES

#### 1. Deliberate Indifference

Section 1983 prohibits any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." 42

U.S.C. § 1983. The plaintiff alleges that the defendants violated her Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII.

As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). However, the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," and thus courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)), *reh'g en banc denied*. Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference. *Estelle*, 429 U.S. at 105-06.

"Deliberate indifference" is analyzed by both an objective and a subjective component. *See Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

In cases involving an inmate's medical needs, the need "must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In considering the subjective component, a plaintiff must produce evidence showing "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. The subjective component requires that an official who actually knew of the serious medical need possessed "a sufficiently culpable state of mind in denying medical care." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id*. at 813 (quoting *Farmer*, 511 U.S. at 835). The Supreme Court has also said, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

The Sixth Circuit has held that "deliberate indifference may be established by a showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l*

*Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). The relevant inquiry as to whether a defendant provided grossly inadequate care is "whether a reasonable doctor . . . could have concluded his actions were lawful." *Waldrop v. Evans*, 871 F.2d 1030, 1034 (11th Cir. 1989). However, the Eleventh Circuit cases upon which *Terrance* was based note that a showing of "grossly inadequate care" satisfies only the objective prong of the "deliberate indifference" standard. A plaintiff must still present evidence of a prison official's subjective awareness of, and disregard for, a prisoner's serious medical needs. *See Campbell v. Sikes*, 169 F.3d 1353, 1364-65 & n. 9 (11th Cir. 1999).

The plaintiff alleges in her Complaint that the defendants were deliberately indifferent by failing to provide her with her medications and failing to provide her access to a physician to treat her illness. She alleges that the nurses intentionally denied or delayed plaintiff's access to medical care and intentionally interfered with treatment. In her response to the nurses' summary judgment motion, she argues that her condition was so obvious that a lay person would have recognized the need to be treated by a physician, either Dr. Paul or an emergency room physician. Finally, she states that the severe infection of methicillin-resistant Staphylococcus aureus ("MRSA"), which she claims she developed while incarcerated as a result of

her psoriasis, threatened her life. She further argues, "It is the MRSA infection that threatened [her] life, the deliberate indifference to which created a substantial risk of serious harm to [her] in violation of the Eighth Amendment." Thus, in her response, it appears that plaintiff is claiming that the serious risk of harm to which the nurses were allegedly deliberately indifferent was the harm from MRSA, not from her psoriasis.

The nurses admit that the plaintiff's psoriasis was severe. First, she was given Curel lotion, which she normally used to treat her psoriasis. The facts demonstrate that the plaintiff's psoriasis worsened, and she showed the nurses the cracked, bleeding places on her body as a result. After being shown these places, Garland telephoned Paul. Paul ordered prescription Hydrocortisone cream. Plaintiff presented again to the nurses' office, and told Guinn that it did not help. Her conditioned worsened. Guinn then called Paul. He then ordered that the plaintiff receive a Prednisone dose pack and Benadryl. Two days later, Guinn checked on the plaintiff, and Guinn reported that the plaintiff was feeling better, that the lesions were not as irritated, and that the itching had decreased. The next day, the plaintiff confirmed to Guinn that the treatment "really helped." Four days later, the day before plaintiff's release, Guinn reported that the plaintiff did not make any additional complaints, the lesions continued to improve, and the drainage had decreased. The

plaintiff does not dispute this timeline of events.

The plaintiff claims in her affidavit that after her release on February 13, 2007, and upon her hospitalization on February 15, 2007, she was diagnosed with MRSA. She had to undergo surgery to remove "two areas of severe subcutaneous abscess, caused by the MRSA infection, on [her] back and left side."[12] However, she admitted in her deposition that she developed these areas of infection after she was given the Prednisone pack and the Benadryl. More importantly, she never told the nurses of these areas of abscess nor did she show the nurses these two areas. She never asked for treatment of any kind for these lesions, which she claims developed while she was incarcerated. Furthermore, she stated in her deposition that she had no criticism of the nurses at that time.

First, there is no evidence in the record that the plaintiff's medications, Xanax, Lortab, and Soma, were prescribed to treat psoriasis. Plaintiff's deposition testimony reveals that she only used lotions and occasional antibiotics to treat her condition. Second, she claims that the nurses denied her access to medical treatment. The nurses contacted Paul and reported her symptoms and complaints. Although Paul did not physically examine the plaintiff, he gave the nurses orders on how to treat her.

---

[12]The plaintiff did not submit any medical records or affidavits from any healthcare providers supporting these claims. While the Court will assume that plaintiff was in fact diagnosed with MRSA, she has offered no admissible evidence of her diagnosis.

They followed these orders. Thus, it seems the plaintiff is actually claiming inadequate or negligent care, not the denial of care. Nonetheless, the record is clear that the nurses could have requested a physical examination or even sent the plaintiff to the emergency room if they felt her condition warranted.

The pictures of the plaintiff's exacerbated psoriasis and the lesions on her back and side are very disturbing.[13] It is obvious that the plaintiff was suffering from severe psoriasis. The plaintiff relies on a Tenth Circuit case, *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), for the contention that the nurses were deliberately indifferent to her serious medical needs because her need was so obvious that a lay person would recognize the need for a physician's attention. *Id*. at 575. This is the standard even in the Sixth Circuit. In *Ramos*, several inmates brought an action against the state for several alleged constitutional violations arising from prison conditions. *Id*. at 562. Among these was inadequate healthcare. *Id*. at 574-78. Experts of both the state and the inmates agreed that in this situation and for this size prison population, "'physician substitutes' [were] being forced to make decisions and perform services for which they [were] neither trained nor qualified" because of the lack of on-site primary physician coverage. *Id*. at 576. In addition, these experts

---

[13] The photographs in the record were made, according to the plaintiff's affidavit, on February 13 and 15, 2008, one year <u>after her release</u> from the Carter County jail (See Doc. 37-1, ¶ 23). The Court assumes the photographs were made on February 13 and 15, <u>2007</u>.

agreed that the practice of leaving standing orders could not "substitute for adequate on-site physician coverage." *Id*. These findings factored into the district court's decision that the state had violated the inmates' Eighth Amendment rights, a decision which the Tenth Circuit upheld. *Id*. at 578.

The *Ramos* decision, which is not binding upon this Court, is distinguishable from the present case. *Ramos* was a class action based upon challenges to the entire healthcare system; thus, deliberate indifference could have been shown by proving "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff, . . . or by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Id*. at 575. The present case is not a class action, there is no evidence of repeated negligent acts, and no allegations of standing orders. This Court does not find this case particularly helpful or persuasive.

Moreover, the plaintiff narrows her claim in her response to the motion for summary judgment to a claim that it was the " MRSA infection that threatened plaintiff's life," and the "deliberate indifference to [that condition] which created a substantial risk of harm to [her] in violation of the Eighth Amendment." There is, as noted above, no admissible evidence in the record that plaintiff was in fact diagnosed

with a life threatening MRSA infection.  Furthermore, she made no complaint to the nurses of any infection and never complained of or showed the lesions on her back and left side, which she claims to have to be "two (2) areas of severe subcutancome abscess, caused by the MRSA infection" to the nurses or any other jail personnel. Even accepting as true that plaintiff was in fact diagnosed with MRSA after her release from the jail, plaintiff offers nothing to suggest that the MRSA infection, as opposed to her psoriasis, was obvious  to the nurses or that the risk of MRSA was obvious.  In fact, there is no evidence that she contracted the MRSA while at the jail and she argues only that because of "the open and oozing wounds, [she] was more susceptible to contracting MRSA and other infections."

Considering all of the admissible evidence in the record, this Court concludes that there is no genuine issue of material fact as to whether Adkins and Guinn acted with deliberate indifference to the plaintiff's serious medical needs.  As stated, deliberate indifference is analyzed by both an objective and a subjective component.  *Comstock*, 273 F.3d at 702.  Again, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore,*, 390 F.3d at 897.  Even if the plaintiff's needs were obvious, there is no genuine issue of material fact as to the subjective prong. As set forth above, a

showing of "grossly inadequate care" satisfies only the objective prong of the "deliberate indifference" standard. A plaintiff must still present evidence of a prison official's subjective awareness of, and disregard for, a prisoner's serious medical needs. She has failed to do so in this case.

There is no evidence that the Adkins and Guinn "subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." *Comstock*, 273 F.3d at 703. These nurses examined the plaintiff, reported their findings to the physician, and followed the physician's orders in providing treatment to the plaintiff. The plaintiff admits that she did not make them subjectively aware of the lesions on her back and left side. She further stated to Guinn that she was feeling better and that the treatment helped. There are no allegations that these nurses knew of other inmates with Staph infections or that they were aware of any types of infections being prevalent in the Carter County Jail. As stated earlier, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Finally, as to Garland only, the plaintiff presented evidence in the form of Garland's daughter's affidavit. The affidavit stated that on October 9, 2008,

Garland told Hilton Brummitt that she telephoned Paul four times and requested that he come to the jail to see plaintiff, but that he refused. Paul would not authorize the plaintiff to be taken to the hospital, and Garland told her daughter that Paul told Garland that "the only way that [the plaintiff] would be taken to the hospital was in a body bag."[14]

This Court initially notes that plaintiff's counsel moved on October 8, 2008, to reopen discovery because plaintiff's counsel "received information on October 6, 2008[,] that bears directly on the deliberate indifference of the Defendants to Plaintiff's medical needs, and, specifically, on the subjective element of the two-pronged test of 'deliberate indifference' as set forth in Farmer v. Brennan, 511 U.S. 825 (1994)." The plaintiff supplemented this motion with Hilton Brummitt's affidavit on October 23, 2008, which summarized the alleged October 9, 2008 conversation with her mother. The magistrate judge granted plaintiff's motion, and he also granted the defendants' subsequent motion to likewise depose Kenneth Lee Brummitt, the plaintiff's son, who was, at that time, dating Hilton Brummitt.

This timeline clearly indicates that either the conversation had not taken place at the time its alleged content was told to plaintiff's counsel and had been fabricated or that the October 9, 2008 date was a mistake. The plaintiff does not

---

[14]Garland does not argue that these statements constitute inadmissible hearsay.

allege that the date was a mistake, nor does plaintiff submit deposition testimony from Hilton Brummitt which contradicts the date.  To the contrary, the only evidence in the record indicates that the conversation took place on October 9, three days after  that information was received by plaintiff's counsel.

If the timeline were not troubling enough, the deposition testimony from Hilton Brummitt and Kenneth Brummitt also makes the information suspect.  The testimony indicates that Hilton Brummitt had conversations about the case with the plaintiff, and she knew that Kenneth Brummitt was supposed to receive money from the lawsuit if the plaintiff was successful.  Also, she testified at her deposition that she was told that the suit against her mother would be dropped if she swore to the contents in the affidavit.  In addition, she testified in her deposition that Paul did not direct the "body bag" comment specifically at the plaintiff. Considering the time and the manner in which the information supposedly came about, this Court still cannot find with respect to Garland that there is a genuine issue of material fact as to the subjective prong of the analysis.  A  mere scintilla of evidence is not enough.  *Anderson*, 477 U.S. at 252; *McClain*, 244 F.3d at 800.

Further, even if the evidence from the affidavit is considered as circumstantial evidence that Garland knew of facts from which to infer a substantial risk to the plaintiff and actually drew that inference, the evidence in the affidavit does

not establish that Garland disregarded the inference. If the affidavit is to be believed, it showed that Garland called Paul, reported her observations, and then relied upon her superior's judgment. In addition, as noted above, the plaintiff limited her claim in her response to MRSA, and it is very troubling that the plaintiff never complained or showed the lesions on her back and left side, which she claims resulted from the MRSA, to Garland. According to the record, Garland last saw the plaintiff on February 2, 2007. The plaintiff allegedly did not develop the sores on her back and side as a result of the MRSA until sometime after February 5, 2007. Based on the above, this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347.

For the reasons set forth above, the Defendants' motion in this regard is **GRANTED**. The case against all of the nurses will be **DISMISSED**.

## 2. Qualified Immunity

The defendants submit that if there is a genuine issue of fact as to whether they were deliberately indifferent to plaintiff's serious medical needs, then they are entitled to qualified immunity from the plaintiff's claims.

> In determining an [defendant]'s entitlement to qualified immunity [this Court] follow[s] a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First taken in the light most favorable to

the plaintiff, [the Court] decide[s] whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions, are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

The defendant nurses candidly admit, however, that under existing case law, they are not entitled to qualified immunity because they are not employees of Carter County.[15] They acknowledge the holding of *Richardson v. McKnight*, 521 U.S.

---

[15] Dr. Paul does not make the same concession.

399 (U.S. 1997) (prison guards who were employed by a private for-profit company that contracted with the state to manage a correctional facility were not entitled to the protections of qualified immunity), *Cook v. Martin*, 2005 WL 2175922 (6th Cir. 2005) (applying *Richardson*, held that a private physician's assistant was not entitled to the protections of qualified immunity), *Maddle v. Correctional Medical Services, Inc.*, 2008 WL 839715 (M.D. Tenn. 2008) (qualified immunity was not applicable for a privately employed physician), and *Gray v. Metropolitan Government of Nashville and Davidson County*, 2005 WL 2334119 (M.D.Tenn. 2005) (unpublished) (privately employed nurses were not entitled to qualified immunity). The nurse defendants argue, nevertheless, that the compositon of the Supreme Court has changed since *Richardson* was decided and the Court should find that they are entitled to qualified immunity despite current case law.[16]  However, this Court need not reach the qualified immunity issue as it has already decided that there is no genuine issue of material fact as to the nurses as to deliberate indifference.

### B.  THE COUNTY[17]

It is firmly established that a municipality, or as in this case a county,

---

[16]  The Court notes that a United States District Court has no authority to reverse a decision of the United States Supreme Court.  Only the Supreme Court can do so.

[17]  The claims made by the plaintiff against Christopher W. Mathes are official capacity claims, made against Mathes in his capacity as sheriff of Carter County.  The Court will thus not consider the claims against Mathes aside and apart from the claims against the County.

cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 694. To prevail, the plaintiff must show that the alleged federal rights violation occurred because of a municipal policy or custom. *Id*.

In so doing, the plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003).

The County presented evidence that the policy was that the nurses had the authority to contact the jail physician at any time and to refer patients for emergency medical treatment if necessary. The only evidence offered by the plaintiff in an attempt to create a genuine issue of material fact as to a policy is her allegation that an unidentified jail nurse told her that she would be taken to see a physician only if she were to stop breathing. In addition, the plaintiff offered the affidavit of Hilton Brummitt, in which she stated that her mother, Defendant Garland, told her that Paul would not send inmates to the hospital unless they were in a "body bag." The plaintiff's allegation of what an unidentified nurse told her is insufficient to create a genuine issue of material fact. Furthermore, this statement is inadmissible hearsay as

to the County.  Even if this statement were admissible, there is no evidence that the County was aware of,  much less approved of,  such practice.  The County's motion in this regard is **GRANTED**, and the case against the County and Mathes will be **DISMISSED**.

### C.  DR. PAUL

#### 1.  Deliberate Indifference

The law and analysis regarding the alleged deliberate indifference of Paul are similar to that of the nurses, especially Nurse Garland.  The record reflects that the nurses communicated to Paul the plaintiff's conditions and that Paul responded with orders for treating the plaintiff.  The nurses followed these orders, and the plaintiff reported that she was feeling better after the Prednisone pack and Benadryl were administered.  The record reflects that the plaintiff did not complete a sick call form requesting to be examined by Paul.  Further, the record does not indicate that the nurses requested that Paul examine the defendant,  other than for the allegation in Hilton Brummitt's affidavit.

The plaintiff received medical care which,  according to her, helped.  She now claims that this care was inadequate despite her not fully informing the medical staff of her condition, i.e., the lesions on her back and side.  Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of

deliberate indifference. *Estelle*, 429 U.S. at 105-06. Deliberate indifference is analyzed by both an objective and a subjective component. *Comstock*, 273 F.3d at 702. Again, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore,*, 390 F.3d at 897. Even if there is a genuine issue of material fact as to the objective prong, there is not as to the subjective prong. As stated earlier, a showing of "grossly inadequate care" satisfies only the objective prong of the "deliberate indifference" standard. A plaintiff must still present evidence of a prison official's subjective awareness of, and disregard for, a prisoner's serious medical needs.

The only evidence of Paul's subjective awareness comes from Hilton Brummitt's affidavit in which she stated that her mother told her that she requested that Paul come to the jail to examine the plaintiff on four occasions and that he refused. She also stated that Garland told her that Garland requested authorization to send the plaintiff to the hospital, and he replied that the only way that the plaintiff would be taken to the hospital was in a body bag. The admissibility of this evidence is discussed below. Aside from this evidence, there is no evidence that Paul "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*,

273 F.3d at 703. Again, the nurses examined the plaintiff, reported their findings to Paul, and followed Paul's orders. The plaintiff did not make the nurses aware of the lesions on her back and side. The plaintiff reported that she was doing better after treatment. There are no allegations that Paul was aware of any types of infections being prevalent among inmates at the Carter County Jail. Again, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

As to the statements contained in Hilton Brummitt's affidavit, Paul argues that the statements are double hearsay for which there are no exceptions.[18] Thus, he claims, this evidence is not admissible. Federal Rule of Evidence 801(c) states, "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Subsection (d)(2) of Rule 801, which defines certain statements as non-necessary, provides:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the

---

[18]As noted above, Garland does not challenge the admissibility of the statements. Further, this Court has already concluded that there is no genuine issue of material fact as to whether Garland was deliberately indifferent. As such, this portion of the opinion will address the evidence as being offered **against** Paul only.

party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Fed. R. Evid. 801(d)(2).

First, the plaintiff argues that all statements are not hearsay because "they are not offered for the truth of the matter asserted, but to show the state of mind of the declarants." The plaintiff cites *Jacklyn v. Schering-Plough Healthcare Products Sales Corporation*, 176 F.3d 921, 927 (6th Cir. 1999), in support of this assertion. In that sex discrimination in employment case, the plaintiff submitted an affidavit in which she stated that her manger told her that the defendant's central regional manager told the manager that "[the central regional manager] did not want any 'skirts' working for him." *Id*. at 926. The Sixth Circuit noted that the district court "recognized that [the central regional manager's] statement may not be hearsay since it is not offered for the truth of the matter asserted, but to show his state of mind." *Id*. at 927. However, the Sixth Circuit went on to hold that the statement was inadmissible double hearsay

because the manger's statement, i.e., that he heard the central regional manager make the "skirts" comment, was offered for its truth. *Id.* Thus, there had to be a basis for its admission. *Id.* The Sixth Circuit did not agree with the plaintiff that this statement was an admission by a party opponent because it was not made "concerning a matter within the scope of the agency or employment." *Id.*; *see also* Fed. R. Evid. 801(d)(2).

Here, this Court must analyze two sets of statements. The first statement in the first set is that Garland told Hilton Brummitt that she told Paul to come to the jail. The second statement is Paul's response of not coming to the jail. The first sentence of the second set is that Garland told Hilton Brummitt that she requested that Paul authorize the plaintiff to be taken to the hospital. The second statement is Paul's response that the only way the plaintiff would be taken to the hospital was in a body bag. The statements must have an independent basis for the admission of each. The Court will analyze each set in turn.

As noted, the plaintiff claims that the statements are not offered for their truth "but to show the state of mind of the **declarants**." (Emphasis added.) While the statement that Garland told Paul to come to the jail could be offered to prove Garland's state of mind, it cannot be offered to prove Paul's state of mind. Paul is not the declarant, and the statement cannot possibly show what his state of mind would be. Therefore, when offered against Paul, it can only be offered for its truth. Thus,

there must be another basis for its admission.

The plaintiff argues that the statement is admissible as an admission by a party opponent, and, thus, non-hearsay. To be such an admission in this context, the statement must be "offered against a party" and must be a "statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." There is no evidence in this record that Garland stated in her own affidavit that she told Paul to come to the jail. This Court doubts that this statement qualifies as an admission in the first place. Nonetheless, it is a statement offered against Paul, allegedly by his agent or servant. This statement was made to Hilton Brummitt on October 9, 2008. According to Garland's deposition given on November 4, 2008, she was not working for Paul at the Carter County Jail on October 9, 2008.[19] Thus, this statement to Hilton Brummitt was not made during the existence of the relationship. Therefore, it does not qualify as an admission by a party opponent. Finally, the plaintiff does not argue that there is an exception to the hearsay rule that would allow the statement's admission. As such,

---

[19]Although the deposition does not state that explicitly, it states:

> Q. . . . Are you still working at Hermitage Nursing Home?
> A. No. I work at Life Care Center of Elizabethton.

It is not plausible that Garland could be working at the Carter County Jail for Paul on October 8, 2008, get a job and work at Hermitage Nursing Home, and then get a job and start working at Life Care Center of Elizabethton in less than one month's time.

this Court concludes that this statement is inadmissible hearsay when offered against Paul. Because there is not an independent basis for admission of both statements within the first set of statements sought to be admitted by the plaintiff, both statements are inadmissible.

The Court will now analyze whether the statements contained in the second set of statements are admissible. Again, the statement to Hilton Brummitt that Garland told Paul that she requested that Paul authorize that plaintiff be taken to the hospital is offered for its truth. It does not and cannot show Paul's state of mind; he was not the declarant. Similar to Garland's statement above, this too is likely not an admission, although it is offered against Paul. However, this statement was also made to Hilton Brummitt after Garland's relationship with Paul had ended. Thus, the non-hearsay provision of Rule 801(d)(2)(D) does not apply. In addition, the plaintiff has not argued that there is a hearsay exception to admit this statement. Accordingly, it is inadmissible.

Even if this evidence were admissible, this Court would not find that there is a genuine issue of material fact as to whether Paul was deliberately indifferent. The plaintiff has still failed to present evidence showing that Paul disregarded any inference drawn as to a substantial risk to the plaintiff. If the statements had been made to Paul, this Court infers that the statements would have been made at the time

Garland observed the plaintiff on February 2, 2007, or shortly thereafter. Guinn called Paul subsequent to February 2, 2007, reporting her opinion as to the plaintiff's condition. At that point, Paul issued orders to treat the plaintiff's psoriasis. There was no mention or suspicion of MRSA by the nurse. The plaintiff allegedly did not develop the sores on her back and side as a result from the MRSA until sometime after February 5, 2007. Again, the plaintiff did not inform the nurses of these sores, and she claims that is was the MRSA to which the defendants were deliberately indifferent, not her psoriasis. Based on the above, this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347.

Based on the above, this Court cannot FIND that there is a genuine issue of material fact for trial. Paul's motion is **GRANTED**, and this claim against him will be **DISMISSED**.

## 2. Qualified Immunity

Because this Court has concluded that there is no genuine issue of material fact as to Paul, this Court need not reach the qualified immunity issue.

## 3. Supervisory Liability

Liability under § 1983 cannot be based on the doctrine of *respondeat superior*. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, the plaintiff

must show that the defendant personally violated her rights. For supervisory liability to attach, the defendant must be shown to have encouraged the violation of the plaintiff's rights "or in some other way directly participated in it." *Id*. (internal quotation marks omitted). "At a minimum," the defendant must have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (internal quotation marks omitted).

Stated differently, supervisory liability will attach if the defendant possessed information revealing a "strong likelihood" of unconstitutional conduct by subordinate officers but did nothing to prevent the misconduct, thereby causing harm to the plaintiff. *See Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir.2002), *cert. denied*, 537 U.S. 1232 (2003); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 513 (6th Cir.1996). In such circumstances, the defendant is said to have exhibited "deliberate indifference" to violations of the plaintiff's constitutional rights.

First, the plaintiff never actually filed her First Amended Complaint although she was granted permission to do so. That complaint contained the allegations as to this theory; there are no such allegations in the original complaint. Nevertheless, this Court has concluded that the "subordinate officers" did not exhibit any unconstitutional conduct. Therefore, Paul could not be liable under this theory.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motions are **GRANTED**, and the plaintiff's case against all defendants will be **DISMISSED WITH PREJUDICE**.

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE